UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VALLAMBROSA HOLDINGS, LLC, | ) | CHAPTER 11 |
| | ) | CASE NO.  08-40791-LWD |
| Debtor. | ) | |
| | ) | |
| Tax I.D. No. 20-1330863 | ) | |
| _____ | ) | |

## CHAPTER 11 DISCLOSURE STATEMENT OF
## DEBTOR VALLAMBROSA HOLDINGS, LLC
## DATED AUGUST 4, 2008

JAMES L. PAUL
*Georgia Bar No. 567600*
JOHN K. REZAC
*Georgia Bar No. 601935*
CHAMBERLAIN, HRDLICKA, WHITE
    WILLIAMS & MARTIN
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia  30303
(404) 659-1410

JAMES L. DRAKE, JR
*Georgia Bar No. 229250*
JAMES L. DRAKE, JR, PC
P.O. Box 9945
Savannah, Georgia 31412
(912) 790-1533

*Co-Counsel for Debtor Vallambrosa Holdings, LLC*

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1
    A.  Purpose of Disclosure Statement.................................... 1
    B.  Background Events Leading to Debtor Vallambrosa's Chapter
        11 Filing and Debtor Vallambrosa's Goals in Filing This
        Chapter 11 Case................................................................ 3

II.  DESCRIPTION OF DEBTOR VALLAMBROSA'S PROPERTY,
     DEBTOR VALLAMBROSA'S PRINCIPALS, BUSINESS
     OPERATIONS, AND OTHER SIGNIFICANT RELATIONSHIPS.......13
    A.  Debtor Vallambrosa's Property ..................................... 13
    B.  Development and Operating Experience of Debtor
        Vallambrosa's Management ......................................... 15
    C.  Debtor Vallambrosa's Business Operations................................. 16

III.  HISTORY OF OPERATIONS OF DEBTOR VALLAMBROSA
      AND DEBTOR VALLAMBROSA'S PROPERTY ................................16
    A.  Prepetition Operating History ..................................... 16
    B.  Postpetition Operating History.................................... 16

IV.  DESCRIPTION OF CLAIMS................................................17
    A.  Class 1 Claims:  Administrative Claims...................................... 17
    B.  Class 2 Claims:  Non-Tax Priority Claims .................................. 20
    C.  Class 3 Claims:  Priority Tax Claims ........................................ 20
    D.  Class 4 Claims:  Chatham County Secured Tax Claims .............. 21
    E.  Class 5 Claim:  Canpartners Secured Claim................................. 22
    F.  Class 6 Claims:  Unsecured, Non-Priority, Non-Insider Claims ... 22
    G.  Class 7 Claim:  Lanyard Development, Inc. $1,000,000
        Unsecured Claim ......................................................... 22
    H.  Class 8 Claims:  Canpartners Unsecured Deficiency Claim ......... 22
    I.  Class 9 Interest:  Equity Interests Claim....................................... 23

V.  SUMMARY OF PLAN .....................................................23
    A.  Treatment Of Classes Of Claims Or Interests Which Are Not
        Impaired Under The Plan............................................ 23
    B.  Treatment Of Classes Of Claims Or Interests Are Impaired
        Under The Plan............................................................ 27

VI.     FEASIBILITY OF the PLAN ................................................................45

VII.    PRESENT CONDITION OF DEBGTOR Vallambrosa ..........................46

VIII.   BEST INTEREST OF CREDITORS TEST .........................................47

IX.     RELATIONS WITH AFFILIATES .......................................................48

X.      FUTURE MANAGEMENT ..................................................................49

XI.     IDENTITY AND COMPENSATION OF INSIDERS ...........................50

XII.    DISCUSSION OF CERTAIN FEDERAL TAX CONSEQUENCES......51
        A.      In General ...................................................................... 51
        B.      Tax Consequences to Debtor Vallambrosa................................. 51
        C.      Class 9 Equity Interest ...................................................... 52
        D.      Class 1, 2 and 3 Unimpaired Claims ...................................... 52
        E.      Class 4 Chatham County Secured Tax Claim.............................. 53
        F.      Class 5 Canpartners Secured Claim and Class 8 Canpartners
                Unsecured Deficiency Claim ...................................... 53
        G.      Class 6 Unsecured, Non-Priority, Non-Insider Claims and Class
                7 Lanyard Development, Inc. $1,000,000.00 Unsecured Claim ... 54
        H.      Disclaimers and Notice to Obtain Professional Tax Assistance.... 55

XIII.   RISK FACTORS ...............................................................................57
        A.      General Economic Conditions .............................................. 58
        B.      Local Economic Conditions ................................................. 58

XIV.    DISCLAIMERS..................................................................................58

XV.     VOTING, ACCEPTANCE AND CONFIRMATION ............................60

# I.

## INTRODUCTION

**A.** **Purpose of Disclosure Statement.**

On May 6, 2008, Debtor Vallambrosa Holdings LLC, a Georgia limited liability company ("Debtor Vallambrosa"), filed for relief under Chapter 11, Title 11, United States Code, United States Bankruptcy Court for the Southern District of Georgia, Savannah Division. On August 4, 2008, Debtor Vallambrosa filed its Plan of Reorganization (hereinafter the "Plan").

Pursuant to the requirements of Section 1125 of the Bankruptcy Code, Debtor Vallambrosa has prepared and filed this Disclosure Statement. Debtor Vallambrosa's purpose in providing this Disclosure Statement is to provide the holders of Claims with adequate information about Debtor Vallambrosa's Plan to enable creditors to make an informed judgment on the merits of the Plan.

If this Disclosure Statement is determined to be adequate, the Court will set a time and date for the hearing on the confirmation of the Plan. As allowed by the Code, this Disclosure Statement may be amended. When the Plan is distributed, creditors whose Claims have been filed and allowed will have an opportunity to vote on the Plan by completing and mailing ballots which they will receive from the Clerk of Bankruptcy Court. In order to be counted, ballots must be filed within

the time ordered by the Bankruptcy Court, or in the absence of such an Order, by the date of the hearing on confirmation.  The votes of all creditors are important. The Plan can be confirmed by the Bankruptcy Court if it is accepted by holders of more than two-thirds (⅔) in amount and more than one-half (½) in number of Claims of the creditors in each class voting on the Plan.  If the requisite acceptances are not obtained as to any specific class, the Bankruptcy Court may confirm the Plan if it finds that the Plan provides fair and equitable treatment to any class which has not accepted the Plan in the requisite number and amount.

**DEBTOR VALLAMBROSA HAS NOT AUTHORIZED ANY REPRESENTATION CONCERNING DEBTOR VALLAMBROSA, PARTICULARLY AS TO THE VALUE OF DEBTOR VALLAMBROSA'S PROPERTY OR PROJECTIONS OF INCOME AND EXPENSES, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE ACCEPTANCES, WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON AS BEING THOSE OF DEBTOR VALLAMBROSA.  ANY SUCH ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO THE BANKRUPTCY COURT DIRECTLY THROUGH CO-COUNSEL FOR DEBTOR VALLAMBROSA, JAMES L. PAUL, CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & MARTIN, 191 PEACHTREE ST., NE, 34TH FLOOR, ATLANTA, GEORGIA 30303, TELEPHONE: (404) 659-1410.**

**B.**     **Background Events Leading to Debtor Vallambrosa's Chapter 11 Filing and Debtor Vallambrosa's Goals in Filing This Chapter 11 Case.**

Debtor Vallambrosa Holdings, LLC ("Debtor Vallambrosa") owns the approximately 8,210.196 acre development tract ("Debtor's Vallambrosa Project") which is the subject of this Chapter 11 Case.  Debtor Vallambrosa was formed in 2006 by Jewett W. Tucker, Jr. ("Jewett Tucker") to develop the 8,210.196 acre tract he had assembled and held through various entities and forms for approximately 25 years.

Starting in approximately 1981, Jewett Tucker began assembling what had been an approximately 10,000 acre rice plantation in South Chatham County.  The entire tract was bounded on the south by the Ogeechee River, on the east by the Atlantic Ocean and Ogeechee River estuary, on the north by what is now the Georgetown area of Savannah, and on the west by US Highway 17.  The property was managed as a hunting and timber plantation while Jewett Tucker waited on development opportunities to mature.

Beginning in approximately 2000, the real estate market had progressed to a state to justify Jewett Tucker starting the initial actions to facilitate development of the 8,210.196 acre tract.  After several years of working with the City of Savannah and Chatham County, Jewett Tucker negotiated an arrangement with the City of Savannah and Chatham County to enable construction of a joint

-3-

Savannah/Chatham County waterline transgressing the tract. This major waterline connects with the City of Savannah water system on the northern boundary of the tract. It transgresses the property in a southwesterly direction and connects with the Chatham County water system on the west. This waterline proceeding through the core of the property became operational and was put under pressure in approximately 2005. During the same period, Jewett Tucker worked with the City of Savannah to install a $4,000,000 lift station to enable sewer lines on the tract to pump sewage to a City of Savannah Sewer Treatment Facility. A fully operational sewer line was run through the core area of the tract and was functional by approximately 2005. As a further preliminary move toward development, Jewett Tucker took action to have approximately 700 acres on the northern boundary of the tract annexed into the City of Savannah in 2003. The remaining 7,500 acre annexation was accomplished in approximately mid 2008.

During the time Jewett Tucker was managing the property which now constitutes Debtor's Vallambrosa Project, he financed the acquisition, management and development efforts over the years, both through traditional bank financing, and through the technique of sales of sub-parcels with options to repurchase. Sub-parcels were sometimes transferred into separate entities which would either

proceed with obtaining traditional bank financing or proceed with arrangements for sale and options to repurchase.

By approximately 2005, Jewett Tucker believed the market had developed to a stage that justified proceeding with a master development plan for the Vallambrosa tract, and proceeding with actual development of the Vallambrosa tract. By early 2006, Jewett Tucker was negotiating with various potential lenders for development loans and other financing related to development of Debtor's Vallambrosa Project. During negotiations with Marshall BankFirst which is a Minneapolis Minnesota bank, the bank commissioned the national appraisal firm of Joseph J. Blake and Associates, Inc. ("Blake") to appraise a portion of Debtor's Vallambrosa Project. In an appraisal dated April 19, 2006, Blake appraised approximately 900 acres of the 8,210.196 acre tract as having an "as is" market value of $76,300,000.

Ultimately, a loan was not negotiated with Marshall BankFirst. However, loan negotiations proceeded with Canpartners Realty Holding Company IV, LLC ("Canpartners"). A copy of the Blake appraisal which had been commissioned by Marshall BankFirst was delivered to Canpartners as a part of the due diligence work being undertaken by Canpartners in underwriting a potential loan respecting the real estate constituting Debtor's Vallambrosa Project. Ultimately, Canpartners

committed to make a loan on the 8,210.196 acre development tract constituting Debtor's Vallambrosa Project.

Part of the requirements for this Canpartners loan was that the 8,210.196 acre tract be placed under one ownership on which a first in priority loan would be made by Canpartners. Consequently, Jewett Tucker formed Debtor Vallambrosa as the entity which would take title to the 8,210.196 acre tract from the various entities which either held title to parcels of the tract, or held options to purchase parcels of the tract.

Jewett Tucker negotiated with Canpartners for a two stage loan. Stage one involved a $28,000,000 loan, the proceeds of which would be used to pay off existing debt on the 8,210.196 acre tract, pay amounts necessary to allow exercise of repurchase options related to sub parcels of the 8,210.196 acre tract, establish interest reserves of approximately $6,387,500, tax and insurance reserve of approximately $466,240, and development reserves of approximately $2,477,500 ("Stage One Loan"). This loan was closed and funded.

The Stage One Loan was not contemplated to provide financing necessary to develop Debtor's Vallambrosa Project to the stage where property sales could take place. Rather, as shown in the September 29, 2006 loan agreement and attachments, the Stage One Loan was contemplated to provide financing sufficient

to: complete certain improvements including the sewage pumping station; develop and obtain approval of Planned Unit Development ("PUD") plans; process Debtor's Vallambrosa Project through the Development of Regional Impact ("DRI") procedures; design landscaping; design entryways; design and obtain approval of certain specifically identified spine roads throughout the property; and other design and engineering activities. The primary physical activities contemplated with the Stage One Loan were grubbing, clearing and mulching of the undergrowth on portions of the 8,210.196 acre tract, and the roughing in of three specified spine roads.

The loan documents also contemplated a stage two financing which would be in the approximate amount of $60,250,000 ("Stage Two Loan"). As shown on schedules to the September 29, 2006 loan agreement, the contemplated $60,250,000 Stage Two Loan contemplated repayment in full of the $28,000,000 Stage One Loan, a return of Jewett Tucker's equity in the amount of $15,000,000; an interest reserve of $9,163,000 and a development reserve to fund further development cost in the amount of $6,094,000. An additional approximate amount of $2,000,000 was scheduled to be paid for various financing costs and fees, payable primarily to Canpartners and affiliates. The $6,094.812 reserve for

development expenses was projected to be sufficient to get Debtor's Vallambrosa Project to the stage where product could actually be sold.

While the September 29, 2006 loan agreement does not contain a commitment by Canpartners to proceed with the Stage Two Loan, the loan agreement makes clear that: (i) the Canpartners $28,000,000 Stage One Loan was contemplated to be paid from a refinancing; (ii) no saleable developed product was contemplated at the maturity date of the $28,000,000 Stage One Loan; and (iii) the $60,250,000 Stage Two Loan was contemplated to include funds sufficient to conclude actual physical development of Debtor's Vallambrosa Project such that product would be available to sell.  The loan agreement contains schedules for disbursements from the Stage Two Loan, and includes a "right of first negotiations" whereby Debtor Vallambrosa agrees to negotiate first with Canpartners for further financing, before proceeding with other possible Stage Two Loan negotiations.

With the funding of the reserves for the Stage Two Loan, Debtor Vallambrosa proceeded with the various design, engineering, planning, zoning, and other work necessary to obtain the entitlements to go forward with Debtor's Vallambrosa Project.  The activities included: extensive landscape and front entry design work as contemplated by the loan documents; additional extensive

-8-

landscape design work and land planning work; extensive work necessary to successfully satisfy the requirements for DRI approval; successfully navigating through the DRI process to obtain necessary DRI approvals; development of a master PUD plan; submission of that Master Plan to City of Savannah Zoning Authorities; processing of zoning petitions with the City of Savannah, which zoning petitions are presently scheduled for final hearing on August 19, 2008; and processing of annexation petitions which are completed with annexation in 2008. The activities also included extensive and expensive clearing, grubbing and mulching work, such that the entire approximately 1200 acres of uplands on the 8,210.196 acre tract was cleared of underbrush and undergrowth, and small diameter pine and hardwood trees, resulting in the entire uplands of the 8,210.196 acre tract having the look of a plantation that is ready for marketing and further development.  The activities also included roughing in of some of the spine roads.

In addition to contemplating a $60,250,000 Stage Two Loan to refinance its $28,000,000 Stage One Loan, the loan agreement and the promissory note executed by Debtor Vallambrosa pursuant to the loan agreement contained specific provisions for an extension of the March 29, 2008 maturity date for a period of 6 months, *i.e.*, through September 29, 2008 pursuant to certain terms and conditions, one of which was that no monetary event of default exist which had not been

cured, and no material non-monetary event of default exist. On April 1, 2008, Canpartners gave notice that the loan had matured, notwithstanding that it held several hundred thousand dollars of undisbursed reserves for interest and development. Debtor Vallambrosa attempted to negotiate extensions of the maturity date with Canpartners, using various unfunded reserves held in various accounts, to pay interest, and making various other arrangements. Canpartners refused to extend the maturity date unless Debtor Vallambrosa obtained title to and conveyed as additional security to Canpartners, an approximately 1,600 acre tract of additional real estate located between the western boundary of Debtor's Vallambrosa Project and U.S. Highway 17. Canpartners wrongfully claimed that it should have had the 1,600 acres of additional real estate as collateral for its loan, and that no extension of the maturity date could be obtained without a pledge of this additional real estate. While Debtor Vallambrosa was willing to make reasonable arrangements for the extension, it was not in position to obtain and pledge as collateral, the 1,600 acres of additional real estate.

Because Debtor Vallambrosa did not obtain and convey as additional collateral the 1,600 acres of additional real estate, Canpartners continued on its course of attempting to obtain title to Debtor's Vallambrosa Project. Canpartners seized several hundred thousand dollars which were held in various reserve

accounts of Debtor Vallambrosa with Canpartners, and has refused to give any accounting for the amounts seized, or the application of funds. Canpartners commenced foreclosure on the entire Debtor's Vallambrosa Project, a portion of which was appraised at $76,000,000 when the $28,000,000 loan was made. Debtor Vallambrosa filed this Chapter 11 Case to preserve Debtor's Vallambrosa Project and to enable Debtor Vallambrosa to repay Canpartners and all other creditors on a orderly basis from development of Debtor's Vallambrosa Project. After Debtor Vallambrosa filed this Chapter 11 Case, Canpartners next sought foreclosure on Jewett Tucker's 100% membership interest in the Vallambrosa tract. Continued negotiations for extension of the maturity date failed and Jewett Tucker ultimately filed Chapter 11 to preserve his membership interest in Debtor Vallambrosa in order to enable this case to go forward.

This Chapter 11 Case was filed with the following goals:

1)     To enable Debtor Vallambrosa to preserve its ownership of the real estate constituting Debtor's Vallambrosa Project, continue the zoning process which is underway with the City of Savannah and continue development of the real estate constituting Debtor's Vallambrosa Project;

2)     To enable Debtor Vallambrosa to obtain replacement financing so Debtor Vallambrosa can go forward with the remaining development of Debtor's

-11-

Vallambrosa Project which had been contemplated as a part of the Stage Two Loan which would be provided by Canpartners;

3)      To use the rights and powers of a debtor-in-possession under the Code to structure replacement financing such that it can be effected in a way which makes possible the development of Debtor's Vallambrosa Project such that product can be sold to repay Canpartners, the replacement financing lender and other creditors;

4)      To enable Debtor Vallambrosa to sell developed lots and development parcels free and clear of liens, as allowed by the Bankruptcy Code, so net proceeds can be used to repay Canpartners, the additional replacement financing and other creditors;

5)      In the event the goals set out in subparagraphs (2), (3) and (4) are somehow prevented by Canpartners, Debtor Vallambrosa will satisfy Canpartners Allowed Claim by transfer of real estate found by this Court to be of value sufficient to constitute the indubitable equivalent of the Canpartners Allowed Claim; the remaining portions of the real estate constituting Debtor's Vallambrosa Project will then be unencumbered and available for use in satisfying remaining creditors claims.

## II.

## DESCRIPTION OF DEBTOR VALLAMBROSA'S PROPERTY, DEBTOR VALLAMBROSA'S PRINCIPALS, BUSINESS OPERATIONS, AND OTHER SIGNIFICANT RELATIONSHIPS

**A.**    <u>**Debtor Vallambrosa's Property.**</u>

Debtor Vallambrosa is the owner of the "Debtor Vallambrosa's Project. Debtor Vallambrosa's Project is encumbered by a lien in favor of Canpartners, as collateral securing a loan to Debtor Vallambrosa in the original principal amount of $28,000,000.00, as described more fully in Section I. B., above.

As discussed more fully in Section I. B., above, Jewett Tucker, the sole Member and Manager of Debtor Vallambrosa, through numerous business entities, acquired Debtor Vallambrosa's Project beginning in 1981.  Presently, Debtor Vallambrosa is seeking rezoning of a portion of Debtor Vallambrosa's Project for a mixed use development that will be predominantly residential with supporting commercial uses.  Those uses are intended to serve Debtor Vallambrosa's Project and the nearby community.  The project will be built in phases, with the last phase expected to be completed during 2017.

Because of the scale and type of development proposed (including a traditional neighborhood development component), Debtor Vallambrosa is pursuing a "Planned Unit Development" ("PUD") classification, and intends to

establish permitted uses, development standards, and criteria related to phasing and infrastructure, as well as other related development criteria.  If adopted, the PUD plan will become an ordinance to regulate land use and zoning for Debtor Vallambrosa's Project.  A "Master Plan" will determine which general categories of land use will be allowed, where they will be located, and the amount of acreage within each. The Master Plan will also limit density to: four (4) units an acre for single family detached housing; eight (8) units an acre for attached single family residential; and twelve (12) units an acre for multi-family housing.

In addition to the Master Plan, Debtor Vallambrosa has provided the Savannah Metropolitan Planning Commission ("MPC") with numerous plans, reports and other documents, including a wetlands delineation map, a boundary survey, a topographic survey, a cultural resources survey and a traffic impact study.[1]  The MPC has scheduled a public hearing for August 19, 2008 regarding Debtor Vallambrosa's rezoning request.  Debtor Vallambrosa is optimistic that the MPC will approve Debtor Vallambrosa's rezoning request.

By Order entered July 22, 2008 [Doc. No. 65] the Court approved Debtor Vallambrosa's application to hire an appraiser to appraise Debtor Vallambrosa's

---

[1] Because of the volume of the documents, they are not included in this Disclosure Statement.  However, the reports are available to any creditor or party in interest upon request.

-14-

Project.  Pursuant to that Order, Debtor Vallambrosa hired Joel Pakula, MAI, of Joseph J. Blake and Associates, Inc. ("Blake") based in Atlanta, Georgia.  Blake previously appraised approximately 900 acres of Debtor Vallambrosa's Project, on behalf of Marshall BankFirst, in anticipation of a loan Marshall BankFirst intended to make, but ultimately did not make, to Debtor Vallambrosa.  On April 19, 2006, Blake issued an appraisal report which identified the "as is" market value of the approximately 900 acre portion of Debtor Vallambrosa's Project to be $76,300,000.00.  Blake is in the process of performing the appraisal of Debtor Vallambrosa's Project.

**B.**    **Development and Operating Experience of Debtor Vallambrosa's Management.**

Jewett W. Tucker, Jr. ("Jewett Tucker") is the sole member and manager of Debtor Vallambrosa.  Jewett Tucker directs the business of Debtor Vallambrosa.  On June 5, 2008, Jewett Tucker filed for relief under Chapter 11, Title 11, United States Code, United States Bankruptcy Court for the Southern District of Georgia, Savannah, Case No. 08-40990-LWD ("Tucker Bankruptcy Case").  On July 3, 2008, Debtor Vallambrosa and Jewett Tucker moved this Court to order that this case and the Tucker Bankruptcy Case be jointly administered [Doc. No. 58].  The Court has set a hearing on the motion for August 12, 2008 [Doc. No. 61].

-15-

Jewett Tucker continues to operate Debtor Vallambrosa's business and oversee the development of Debtor Vallambrosa's Project.

**C.    Debtor Vallambrosa's Business Operations.**

Debtor Vallambrosa's primary business operations relate to the development and, ultimately, the marketing of Debtor Vallambrosa's Project.    Debtor Vallambrosa's business operations are more fully described in Section I. B., above, which is incorporated herein by reference.

### III.

### HISTORY OF OPERATIONS OF DEBTOR VALLAMBROSA AND DEBTOR VALLAMBROSA'S PROPERTY

**A.    Prepetition Operating History.**

Debtor Vallambrosa's prepetition operating history is described in Section I. above, which is incorporated herein by reference.

**B.    Postpetition Operating History.**

Debtor Vallambrosa commenced this Chapter 11 bankruptcy case on May 6, 2007 [Doc #1].  Debtor Vallambrosa's Plan is being filed in compliance with the deadlines established by the Bankruptcy Code.  By Order entered July 22, 2008 [Doc. No. 65] the Court approved Debtor Vallambrosa's application to hire an appraiser to appraise Debtor Vallambrosa's Project.  Pursuant to that Order, Debtor Vallambrosa hired Blake based in Atlanta, Georgia.  Blake previously appraised an

-16-

approximately 900 acre portion of Debtor Vallambrosa's Project at $76,300,000.00. Blake is in the process of performing the appraisal of Debtor Vallambrosa's Project.

Debtor Vallambrosa has not made any post-petition disbursements of funds, except for Debtor Vallambrosa's payment to its counsel of $35,000.00 to be held on retainer for payment to Blake, and the disbursement of one half of that retainer ($17,500.00) by Debtor Vallambrosa's counsel to Blake, as authorized by this Court's July 22, 2008 Order.  Debtor Vallambrosa has not received any funds through business operations since the Petition Date.

## IV.

## DESCRIPTION OF CLAIMS

**A.**   **Class 1 Claims:  Administrative Claims.**

Administrative Claim is defined in the Plan as a claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and entitled to priority pursuant to Section 507(a)(2) of the Code, to the extent not previously paid.  Administrative Claims include but are not limited to Claims for: the actual, necessary costs and expenses incurred after the Petition Date of preserving Debtor Vallambrosa's Estate and operating its business, including,

without limitation, wages, salaries, commissions, professional fee Claims, and fees and charges assessed against Debtor Vallambrosa's Estate under 28 U.S.C. § 1930.

In terms of professional fees, Debtor Vallambrosa estimates fees as follows:

1.     <u>Attorneys</u>.  Debtor Vallambrosa has employed James L. Paul and the firm of Chamberlain, Hrdlicka, White, Williams & Martin, and attorneys associated with that firm, and James L. Drake, Jr. and the firm of James L. Drake, Jr., P.C., as co-counsel for Debtor Vallambrosa as Debtor-in-possession.  Debtor Vallambrosa's attorneys will be paid pursuant to orders of the Bankruptcy Court approving applications for payment under applicable law.  Prepetition retainers totaling $100,000.00 will be applied and credited to amounts due Debtor Vallambrosa's counsel for approved fees and disbursements.  For the period from commencement of this case through August 4, 2008, Debtor Vallambrosa's co-counsel has expended time which, if approved at the hourly rates set forth in their applications for employment, would result in compensation in the amount of approximately $56,500.00.   Debtor Vallambrosa's counsel has also made disbursements on behalf of Debtor Vallambrosa for necessary expenses through August 4, 2008, which if approved by the Court would result in reimbursements in the amount of approximately $3,000.00.  The amount of additional fees from August 5, 2008 through the Confirmation Date will depend in part on actions taken

by creditors, particularly Canpartners.    Debtor Vallambrosa estimates that additional professional fees for attorneys will be in the range of $50,000.00 to $100,000.00, exclusive of fees for any adversary proceedings and contested matters within this Chapter 11 case.    Thus after application of the $100,000.00 retainers being held in trust by Debtor Vallambrosa's co-counsel, total attorneys fees are projected to be approximately $50,000.00.

2.    Appraiser.    Pursuant to Court approval by Order entered July 22, 2008 [Doc. No. 65], Debtor Vallambrosa has retained an appraiser to furnish opinion testimony regarding the value of Debtor Vallambrosa's Project.    Debtor Vallambrosa estimates that cost of obtaining an appraisal and the cost of paying hourly charges related to depositions and court appearances will be in the range of $40,000.00 to $50,000.00.

3.    Accountant.    Debtor Vallambrosa has not yet sought approval to retain an accountant.    At this time, Debtor Vallambrosa does not anticipate retaining an accountant, unless necessary for tax return preparation.

In summary, the estimated cost of the Class 1 Administrative Claims which must be paid at confirmation absent a written waiver executed by the claimants are estimated to be in the range of $60,000.00, after application of prepetition retainers, and exclusive of adversary proceedings and contested matters.

**B.**     **Class 2 Claims:  Non-Tax Priority Claims.**

Class 2 Non-Tax Priority Claims consist of Claims under Sections 507(a)(4), (5) and (7) of the Code.  These Claims relate to Claims for wages, salaries, commissions and vacation earned within 180 days prior to the Petition Date, Claims for contributions to any employee benefit plan, and unsecured Claims arising from deposits made before the commencement of the bankruptcy case of money in connection with the purchase, lease, or rental of certain types of property.  Debtor Vallambrosa knows of no priority Claims which exist as defined in Section 507(a)(5).

In summary, there are no Class 2 Non-Tax Priority Claims of which Debtor Vallambrosa is aware.

**C.**     **Class 3 Claims:  Priority Tax Claims.**

The Plan defines Priority Tax Claims as Claims of governmental entities, to the extent that such Claims are entitled to priority under Section 507(a)(8).  As pertinent to this case, these Priority Tax Claims include the following types of taxes: (i) taxes owed or measured by income or gross receipts that meet the requirements set forth in Section 507(a)(8)(A) of the Code; (ii) property taxes meeting the requirements of Section 507(a)(8)(B) of the Code; (iii) taxes that were required to be collected or withheld by Debtor Vallambrosa and for which Debtor

-20-

Vallambrosa is liable in any capacity as described in Section 507(a)(8)(C) of the Code; and (iv) employment taxes and wages, salaries or commissions of the kinds specified in Section 507(a)(4) to the extent such taxes also meet the requirements of Section 507(a)(8)(D).

To the best of Debtor Vallambrosa's information, Class 3 Priority Tax Claims include Claims in favor of Chatham County, Georgia Tax Commissioner for Prepetition 2008 *ad valorem* taxes totaling $75,819.36, and the City of Savannah, Georgia Tax Commissioner for Prepetition 2008 *ad valorem* taxes totaling $22,358.96.

In summary, to the best of Debtor Vallambrosa's information and belief, known Class 3 Priority Tax Claims total approximately $98,178.32 as of the filing of this Disclosure Statement.

**D.    Class 4 Claims:  Chatham County Secured Tax Claims.**

The Class 4 Claims consist of any secured ad valorem tax Claims held by Chatham County, Georgia pertaining to 2007 ad valorem taxes on Debtor Vallambrosa's Project, in the amount Allowed by Final Order of the Court.

**E.**    **Class 5 Claim:  Canpartners Secured Claim.**

The Class 5 Claim consists of the Canpartners Secured Claim in the amount Allowed by Final Order of the Court, which Claim was alleged to be in the approximate amount of $28,140,000 as of the Petition Date.

**F.**    **Class 6 Claims:  Unsecured, Non-Priority, Non-Insider Claims.**

The Class 6 Claims consist of all Allowed Claims which are Unsecured Claims, are not entitled to priority, are not Claims by insiders as defined in 11 U.S.C. § 101(31), and are other than the Class 7 Lanyard Development, Inc. $1,000,000 Unsecured Claim or the Class 8 Canpartners Unsecured Deficiency Claim.

**G.**    **Class 7 Claim:  Lanyard Development, Inc. $1,000,000 Unsecured Claim.**

The Class 7 Claim consist of the Allowed Claim of Lanyard Development, Inc. which is undisputed in amount, but is contingent on obtaining the pending zoning of Debtor Vallambrosa's Project, and annexation of all of the property constituting Debtor Vallambrosa's Project into the City of Savannah, Georgia.

**H.**    **Class 8 Claims:  Canpartners Unsecured Deficiency Claim.**

The Class 8 Canpartners Unsecured Deficiency Claims consist of any claim by Canpartners in a dollar amount in excess of the value of the property constituting Debtor Vallambrosa's Project, as determined by this Court pursuant to

the pending Motion of Debtor Vallambrosa Holdings, LLC f/k/a Vallambrosa Development Company, LLC for Valuation of Real Property [Doc. #50].

## I.    Class 9 Interest:  Equity Interests Claim.

The Class 9 Claim consists of all claims of interests in Debtor Vallambrosa, 100% of which are presently held by Jewett W. Tucker, Jr.

## V.

## SUMMARY OF PLAN

Debtor Vallambrosa's Plan has 8 Classes of potential Claims, and 1 Class of Equity Interest.  The treatment of these Claims and Interest is summarized as follows:

## A.    Treatment Of Classes Of Claims Or Interests Which Are Not Impaired Under The Plan.

1.    Class 1 - Administrative Claims.  Class 1 Claims are not impaired. Unless otherwise agreed, a Person holding an Allowed Claim in Class 1 will receive cash equal to the amount of such Allowed Administrative Claim on the latter of: (i) the Consummation Date; or (ii) the date on which such Person becomes a holder of such Allowed Administrative Claim.

2.    Class 2 - Non-Tax Priority Claims.  Class 2 Claims are not impaired. A Person holding a Class 2 Non-Tax Priority Claim will receive cash equal to the

amount of such Allowed Non-Tax Priority Claim on the latter of: (i) the Consummation Date; or (ii) the date on which such Person becomes a holder of such Allowed Class 2 Non-Tax Priority Claim. Provided however, any such payments will be reduced, if necessary, by the amount of any payments previously paid such Person for prepetition Claims pursuant to orders of this Court.

   3. <u>Class 3 - Priority Tax Claims</u>. Class 3 Claims are not impaired. Allowed Class 3 Priority Tax Claims shall be paid over a 24-month period from the Confirmation Date in the total amount of the Allowed Claim, plus any additional payment ordered by the Court as provided herein. In addition to payments of the amount of the Allowed Priority Tax Claim, the holder of such Allowed Priority Tax Claim shall be paid an amount ordered by the Court (herein "Interest"), as being necessary to assure the holder of such Allowed Priority Tax Claim receives the full value of its Allowed Priority Tax Claim necessary to justify a deferred payment of the Allowed Priority Tax Claim, pursuant to Section 1129(a)(9)(C) of the Code. In the absence of the agreement between Debtor Vallambrosa and the holder of the Allowed Class 3 Priority Tax Claim regarding the appropriate interest, the holder of such Claim shall be paid the Determined Fair Interest Rate, or such other rate as may be set by the Court.

a.      Payment on Funding of Priming Infrastructure Development Loan.  In the event a Priming Infrastructure Development Loan is funded in the manner provided in Article V of the Plan, any Class 3 Priority Tax Claims will be paid by disbursements from the Priming Infrastructure Development Loan.

b.      Payment on Sale to Third-Party Purchaser.  In the event parcels are sold to a third-party purchaser, payments of Class 3 Priority Tax Claims on each of the parcels will be made at the time of the sale or other disposition of the parcel to the third party purchaser.  The portion of any Class 3 Chatham County Priority Tax Claim allocable to said parcel shall be escrowed from proceeds of closing, and held by Debtor Vallambrosa, in escrow for application to payment of Debtor Vallambrosa's Pro Rata portion of the Class 3 Priority Tax Claims.  This Class 3 Priority Tax Claim shall be paid by Debtor Vallambrosa in conjunction with the parcel purchaser's payment of its Pro Rata portion of said Priority Tax Claim allocable to the parcel.

c.      Payment on Exercise of Credit Bid by Holder of Class 5 Canpartners Secured Claim.  In the event a parcel is transferred to the holder of the Class 5 Canpartners Secured Claim pursuant to its exercise of a Credit Bid rights under Section 5.2 E. 4(f) of the Plan and Section 1129(b)(2)(A) of the Code, the portion of the Class 3 Chatham County Priority Tax Claim allocable to such parcel

-25-

transferred pursuant to a Credit Bid, shall be paid to the holder of the Class 3 Claim by the Person making the Credit Bid as holder of the Class 5 Canpartners Secured Claim.

d.      Payment On Transfer In Satisfaction Of Canpartners Secured Claim.  At the time of transfer of a parcel to the holder of the Class 5 Canpartners Secured Claim in satisfaction of debt pursuant to Section 5.2.D.of the Plan, Debtor Vallambrosa shall escrow its Pro Rata share of the Class 3 Priority Tax Claims allocable to said parcel and shall hold those funds for payment of said Priority Tax Claims on the due date, in conjunction with payment by the holder of the Class 5 Canpartners Secured Claim, of its Pro Rata portion of the ad valorem taxes accruing during the year the parcel is transferred to the holder of the Class 5 Canpartners Secured Claim.

e.      Commitment      for      Regular      Installment      Payments. Notwithstanding anything set forth above, the payments of the Class 3 Priority Tax Claims over the 24-month period from the Confirmation Date, will be in amounts such that the amounts paid on the Allowed Class 3 Priority Tax Claims pursuant to subsections 4.3 A-D of the Plan will not be less than amounts necessary to pay the Allowed Class 3 Tax Claims in 8 equal consecutive installments of principal, plus accrued interest, commencing on the 90th day from the Confirmation Date and

continuing on each consecutive 90th day thereafter ("Payment Date") for 7 additional payments.  To the extent that the payments of the Allowed Class 3 Priority Tax Claims in the manner set forth in subsections 4.3 A-D of the Plan do not, on a cumulative basis, equal the amounts which would be paid if the Allowed Class 3 Priority Tax Claim were paid in 8 equal consecutive installments as set forth in subsection 4.3 E of the Plan, Debtor Vallambrosa will pay on each Payment Date, the difference between the cumulative payments made under subsections 4.3 A-D of the Plan, and the cumulative payments which are due pursuant to the commitment for 8 regular installment payments set forth in subsection 4.3 E of the Plan.

**B.**     <u>**Treatment Of Classes Of Claims Or Interests Are Impaired Under The Plan:**</u>

1.     <u>Class 4 Claim</u>.  Chatham County Secured Tax Claims.  Any Class 4 Chatham County Secured Tax Claims is impaired, and shall be treated as follows:

a.     <u>Settlement Alternative</u>.  If by the Confirmation Date, Debtor Vallambrosa and the holder of the Class 4 Chatham County Secured Tax Claims are able to reach agreement regarding the terms of treatment of the Class 4 Chatham County Secured Tax Claim, the Claim shall be treated in the manner agreed between Debtor Vallambrosa and the holder of the Class 4 Chatham County

Secured Tax Claims as reflected by amendment to the Plan or an Order of the Court.

        b.    Cramdown Alternative.  In the event Debtor Vallambrosa and the holder of the Class 4 Chatham County Secured Tax Claims are not able to reach agreement regarding the treatment of the Class 4 Chatham County Secured Tax Claims, the Claims shall be treated as follows:

        (1)    The holder of the Class 4 Chatham County Secured Tax Claim shall retain its lien on the Property constituting Debtor Vallambrosa's Project.  This lien shall be retained until the Class 4 Chatham County Secured Tax Claims are paid in full.

        (2)    The Class 4 Chatham County Secured Tax Claims will be paid in full, with interest at an agreed rate, or alternatively at the Determined Fair Interest Rate, in two equal installments made ninety (90) and one hundred eighty (180) days after the Consummation Date.

    2.    Class 5 Claim – Canpartners Secured Claim.  The Class 5 Canpartners Secured Claim is impaired.  This Claim shall be treated as follows:

        a.    Settlement Alternative.  Debtor Vallambrosa shall continue to attempt to negotiate with Canpartners in an attempt to reach agreement regarding

treatment of the Canpartners Secured Claim.  If by the Confirmation Date, Debtor Vallambrosa and the holder of the Class 5 Canpartners Secured Claim are able to reach agreement regarding the terms of treatment of the Canpartners Secured Claim, the Claim shall be treated in the manner agreed between Debtor Vallambrosa and such claimant, as reflected by amendment to the Plan, or an order of Court.

b.    <u>Cramdown Treatment in Absence of Agreed Treatment</u>.  In the event Debtor Vallambrosa and the holder of the Class 5 Canpartners Secured Claim are not able to agree on the treatment of that Claim, the dollar amount constituting the Allowed Canpartners Secured Claim shall be determined as set forth in subsection 5.2 C. of the Plan.  After determination of the dollar amount of the Allowed Class 5 Canpartners Secured Claim, as set forth in subsection 5.2 C. of the Plan, this Claim will be satisfied under either or both of Cramdown Alternative One as set forth in subsection 5.2 E. of the Plan or, Cramdown Alternative Two as set forth in subsection 5.2 F., of the Plan.

c.    <u>Determination of Dollar Amount of Allowed Class 5 Canpartners Secured Claim</u>.  The dollar amount of the Allowed Class 5 Canpartners Secured Claim is in dispute, partially because Canpartners has failed to furnish Debtor Vallambrosa an accounting respecting Canpartners' offsets and

seizures of funds during the prepetition period. Upon Canpartners' filing of a proof of claim, Debtor Vallambrosa will timely file objections such that the issue respecting the dollar amount of the Canpartners' prepetition claim can be framed. In addition, Debtor Vallambrosa will request the Court to determine the dollar amount of postpetition interest which has accrued on the Class 5 Canpartners Claim. The dollar amount of the Canpartners' prepetition claim, plus any accrued and unpaid prepetition interest will be added to the dollar amount of any postpetition interest and Section 506 attorneys fees to which the Court determines the holder of the Class 5 Canpartners Claim is entitled. The aggregate amount of the Allowed Canpartners Prepetition Secured Claim, plus postpetition interest determined and allowed by the Court, plus Section 506 attorney fees and expenses allowed by the Court shall be totaled and such total shall constitute the reorganization debt respecting the Class 5 Canpartners Claim.

        d.    <u>Valuation of Canpartners' Collateral Under Section 506 and Determination of Amount of Canpartners Secured Claim</u>. Pursuant to Section 506 of the Code, Debtor Vallambrosa has filed a "Motion of Debtor Vallambrosa Holdings, LLC f/k/a Vallambrosa Development Company, LLC for Valuation of Real Property" ("Debtor Vallambrosa's Valuation Motion") [Doc. No. 50] regarding the Vallambrosa Project which secures the Class 5 Canpartners Secured

Claim.  Debtor Vallambrosa's Valuation Motion will seek an order determining the value of:  (i) each of the specifically identified parcels of Debtor Vallambrosa's Project, as of the date of the valuation hearing ("Valuation Date"), and (ii) the value of the entirety of Debtor Vallambrosa's Project as of the Valuation Date.  The holder of the Class 5 Canpartners Secured Claim shall have an Allowed Secured Claim up to the value of collateral held by Canpartners.  To the extent the holder of the Class 5 Canpartners Secured Claim is found to hold collateral which has an aggregate value less than the allowed Class 5 Canpartners Secured Claim, the Claimant shall have an Allowed Unsecured Claim for the amount by which the Claimant's total Allowed Claim exceeds the valuation of the Class 5 Canpartners Secured Claim determined pursuant to Section 506 of the Code.

      e.    <u>Cramdown Alternative One – Proceed with Development of Debtor Vallambrosa's Project and Repay Canpartners From Sales of Developed Lots and Development Parcels</u>.

      (1)    <u>Obtain U.S. Highway 17 Easement</u>.  Debtor Vallambrosa will obtain the U.S. Highway 17 Easement, and will deliver at the Confirmation Hearing, as a condition of confirmation of the Plan, a properly surveyed and engineered U.S. Highway 17 Easement in recordable form.  The U.S. Highway 17 Easement will be recorded within five (5) Business Days from the date on which

this Court's Order confirming Debtor Vallambrosa's Plan becomes a final Order.

(2)    Obtain Priming Infrastructure Development Loan.  On or before the Confirmation Date, Debtor Vallambrosa will obtain a development loan for the purpose of construction of a minimum of 60 developed lots, plus construction of roads, water, sewer and other improvements necessary to accommodate development of the entire 500 acre core of Debtor Vallambrosa's Project.  The terms of the Priming Infrastructure Development Loan shall include the following:

(a)    Principal amount.    Up    to    approximately $5,000,000 for disbursement for actual improvements, plus dollar amount necessary to pay any priority ad valorem tax claims, marketing cost, and amounts sufficient to constitute interest reserve for twenty-four (24) months;

(b)    Interest rate.   Market rate of interest based on interest rates at time of closing;

(c)    Security.   First in priority security interest on Debtor's Vallambrosa's Project;

(d)    Notice of default and right to cure.   Debtor Vallambrosa will be entitled to receive notice of default and have a specifically

-32-

identified period of time within which to cure defaults. Canpartners will simultaneously receive notice of default and will have an additional time within which to cure defaults.

(e)    <u>Payments and maturity date</u>.  Loan will be repaid from sale of developed lots and development parcels based on release prices agreed as between Debtor Vallambrosa and the lender funding the Priming Infrastructure Development Loan; Canpartners will have right of first refusal and credit bid rights respecting any sale of a released parcel as specified in Sections 5.2 F. 4(e) and (f) of the Plan.  To the extent that the Priming Infrastructure Development Loan is not paid from sales of released parcels, on or before 24 months from the Confirmation Date, any remaining balance on the loan will be repaid from the proceeds of the auction procedure provided in Section 5.2 F. 4(b) of the Plan.

3.    <u>Obtain Commitment of City of Savannah to Install Connector Road</u>. Debtor Vallambrosa will conclude negotiations with the City of Savannah respecting construction of a connector road by the City of Savannah, which connector road will be constructed over the U.S. Highway 17 Easement from U.S. Highway 17 to the western boundary of Debtor Vallambrosa's Project and from such western boundary to Chevis Road or Wild Heron Road, within the city limits

-33-

of Savannah ("Connector Road").  The Connector Road will be constructed at the expense of the City of Savannah; however, the cost of the road advanced by the City of Savannah will be reimbursed by the generation of tap fees resulting from the sales of developed lots and other development parcels constituting portions of Debtor Vallambrosa's Project.

4.   Pay Canpartners from Sale of Development Lots and Development Parcels.  Upon finalization of arrangements and commitments for funding of the Priming Infrastructure Development Loan, and the City of Savannah's construction of the Connector Road, Debtor Vallambrosa will proceed with presales of developed lots and development parcels within Debtor Vallambrosa's Project. Debtor Vallambrosa will continue with presales of developed lots until such time as infrastructure is in place and the Connector Road has been completed, whereupon Debtor Vallambrosa will close presales of developed lots and continue selling developed lots.  Lot sales will proceed as follows:

a.   Retention of Canpartners' lien.  The holder of the Class 5 Allowed Canpartners Secured Claim shall retain its lien on the collateral it held on the Petition Date, subject to subordination of the Canpartners Secured Claim as a result of the Priming Infrastructure Development Loan.

-34-

b. <u>24 month sale period and auction</u>. The Class 5 Allowed Canpartners Secured Claim will be paid in full through the sale of developed lots and other development parcels within Debtor Vallambrosa's Project over a period of not more than 24 months from the Confirmation Date ("Sale Period"). In the event the Canpartners Secured Claim has not been fully paid by the end of the 24 months from the Confirmation Date, Debtor Vallambrosa shall retain a reputable auctioneer familiar and experienced in auctioning property similar to Debtor Vallambrosa's Project, which auctioneer will commit to advertise and publicize the auction of specifically identified parcels of Debtor Vallambrosa's Project in a commercially reasonable way to generate interest in sale of the remaining portions of Debtor Vallambrosa's Project. The public notice and advertisement of auction shall proceed for not less than sixty (60) days preceding the auction of the remaining portions of Debtor Vallambrosa's Project. Debtor Vallambrosa will furnish Canpartners notice of the proposed auctioneer. In the event Canpartners does not approve the proposed auctioneer, Debtor Vallambrosa and Canpartners shall be entitled to submit proposed auctioneers to this Court whereupon this Court shall appoint an auctioneer after notice to both Debtor Vallambrosa and Canpartners, and hearing. Debtor Vallambrosa shall furnish the holder of the Class 5 Canpartners Secured Claim, copies of all advertisements and notices

disseminated by the auctioneer.  The auction of the remaining portions of Debtor Vallambrosa's Project shall occur before the end of 27 months from the Confirmation Date.  All closings of sales of portions of Debtor Vallambrosa's Project in such auction shall occur before the end of 29 months from the Confirmation Date.  Debtor Vallambrosa shall be entitled to stop the auction, at such time as the net proceeds of auction (i.e., auction price less commissions and other sales expenses to auctioneers) equal 1.2 times the outstanding balance due on the Priming Infrastructure Development Loan and the Class 5 Canpartners Secured Claim, at the time the auction is commenced.

c.    Interest accrual and payment.  Interest shall accrue on the daily outstanding balance of the Allowed Class 5 Canpartners Secured Claim commencing at the Confirmation Date, at the rate of:  (i) Prime plus 2 % per annum, or (ii) at the Determined Fair Interest Rate, in the even the holder of the Allowed Class 5 Canpartners Secured Claim does not accept the interest rate proposed in clause (i) above.

d.    Sale of parcels free and clear of liens.  During the Sale Period and subject to the limitations set forth below regarding the right of the holder of the Class 5 Canpartners Secured Claim to exercise a right of first refusal or make a Credit Bid for the purchase of developed lots or development parcels which are

proposed to be sold, Debtor Vallambrosa may sell all of the real estate and improvements thereon constituting Debtor Vallambrosa's Project, in separate parcels, by groups of parcels, or in their entirety, free and clear of all liens, claims and encumbrances of all Persons. Any such liens, claims or encumbrances shall attach to the proceeds of sale of the parcels sold.

> e.    Canpartners' right of first refusal during the period proceeding satisfaction of Priming Infrastructure Development Loan. During the period proceeding satisfaction of the Priming Infrastructure Development Loan, Canpartners shall have a right of first refusal to purchase lots and development parcels as set out herein. Prior to the time Debtor Vallambrosa offers a lot or development parcel for sale to any other Persons, Debtor Vallambrosa shall furnish Canpartners a description of the lot or development parcel, and the price at which Debtor Vallambrosa intends to market the lot or development parcel for sale ("Offer Notice"). The Offer Notice shall also include a list of any exceptions to title existing on the date of the Offer Notice. Canpartners shall have 10 days from receipt of the Offer Notice within which to exercise a right of first refusal to purchase the lot or development parcel by giving notice that Canpartners will purchase the specifically identified lot or development parcel at the price set out in the Offer Notice ("Canpartners Purchase Notice"). Upon delivery of the

Canpartners Purchase Notice to Debtor Vallambrosa, Debtor Vallambrosa shall schedule a closing for the sale of the lot or development parcel on not less than fifteen (15) days notice to Canpartners (the "Closing").  At closing: (i) Canpartners shall deliver in good funds to the closing agent, the purchase price set out in the Offer Notice; (ii) the holder of the Priming Infrastructure Development Loan shall deliver to the closing agent a release of the lot or development parcel; (iii) Debtor Vallambrosa shall deliver a limited warranty deed conveying the lot or development parcel to Canpartners subject only to those exceptions to title set out in the Offer Notice; (iv) the closing agent shall deliver the limited warranty deed to Canpartners, shall record the release delivered by the holder of the Priming Infrastructure Loan, and shall deliver to the holder of the Priming Development Infrastructure Development Loan the funds paid by Canpartners, less closing costs including ad valorem taxes pro rated through the Closing Date, title examination fees, attorneys closing fees, recording fees, documentary stamp costs and other normal and customary closing costs.

In the event Canpartners does not exercise its right of first refusal within the period specified above, Debtor Vallambrosa shall be free to sell the lot or development parcel which was the subject of the Offer Notice, on the terms set out in the Offer Notice, without further notice to Canpartners, which sale will be free

and clear of the Canpartners lien.  In addition, Debtor Vallambrosa shall be free to sell the lot or development parcel at any price in excess of the amount specified in the Offer Notice, without further notice to Canpartners, which sale shall be free and clear of the Canpartners lien.

In the event Canpartners fails to exercise its right of first refusal respecting an Offer Notice delivered by Debtor Vallambrosa, and Debtor Vallambrosa makes a decision to sell a lot or development parcel to a Person for an amount less than the amount previously specified in an Offer Notice, Debtor Vallambrosa must deliver to Canpartners a new Offer Notice respecting said lot or development parcel and Canpartners shall have rights of first refusal as set out herein respecting the lot or development parcel at the lesser price specified in the Offer Notice.

f.      Canpartners' right to credit bid after Priming Infrastructure Development Loan is paid.  After the Priming Infrastructure Development Loan is paid, Canpartners shall have credit bid rights as set out herein.   Before consummating any sale of any parcels, Debtor Vallambrosa shall furnish the holder of the Allowed Class 5 Canpartners Secured Claim written notice of the intended sale ("Notice of Sale"), which Notice of Sale shall:  (i) state the specific parcel or parcels of the Vallambrosa Project proposed to be sold; (ii) include as an attachment, the actual sale contract(s); (iii) include as an attachment, the proposed

HUD form closing statement or other closing statement, which closing statement shows all closing costs proposed to be paid in order to consummate the sale of the parcel or parcels.  Any Credit Bid shall be exercised before the expiration of 15 days from delivery of the Notice of Sale, which Notice shall be delivered to a physical address in the state of Georgia, specified in writing by the holder of the Allowed Class 5 Canpartners Secured Claim.  Any such Credit Bid shall be in at least the dollar amount shown on the HUD form or other closing statement as the amount to be disbursed to Debtor Vallambrosa, plus the dollar amount of any ad valorem taxes shown to be due on the HUD form or other closing statement, respecting the parcels being sold.  If the holder of the Allowed Class 5 Canpartners Secured Claim exercises the right to make a Credit Bid for the parcel or parcels which are the subject of the Notice of Sale, the parcel or parcels specified in the Notice of Sale shall be transferred to such claimant, and the Allowed Class 5 Canpartners Secured Claim and accrued interest thereon shall be reduced to the extent of the amounts specified in the Notice of Sale as the amount to be distributed to Seller, as if the property had been sold to a third party pursuant to the Notice of Sale.  The dollar amount of the Credit Bid shall be applied first to the principal balance of the Allowed Class 5 Canpartners Secured Claim, and any remaining amount shall be applied next to the postpetition interest accrued on the

outstanding principal balance of the Allowed Class 5 Canpartners Secured Claim. The holder of the Allowed Class 5 Canpartners Secured Claim shall pay to the Tax Commissioner, Chatham County, Georgia, the dollar amount of any ad valorem taxes which had accrued respecting the parcel or parcels which are the subject of the Notice of Sale, in the dollar amounts set out in the Notice of Sale.

        g.     <u>Application of Net Proceeds of Sale to Third Party</u>.  In the event of a sale of a parcel or parcels to a Person other than the holder of the Class 5 Canpartners Secured Claim, all net proceeds of a sale resulting from the sale of the parcel or parcels, as shown on the HUD form or other closing statement, shall be paid to the holder of the Allowed Class 5 Canpartners Secured Claim, said payments being applied first to the outstanding principal balance of the Allowed Class 5 Canpartners Secured Claim, after which said payment shall be applied to interest which has accrued on the principal balance of the Allowed Class 5 Canpartners Secured Claim at the rates set forth herein.

        h.     <u>Cramdown Alternative Two - Deed Back of Collateral in Satisfaction of Debt</u>.  Once the Court has made a determination of the value of each of the parcels and the entirety of the Vallambrosa Project, Debtor Vallambrosa shall have the option of satisfying all or part of the allowed Class 5 Canpartners Secured Claim by transferring all or any of the parcels to the holder of

the Class 5 Canpartners Secured Claim, in satisfaction of the Allowed Class 5 Canpartners Secured Claim, to the extent of the` dollar value determined by the Court pursuant to Debtor Vallambrosa's Valuation Motion. Notice of intention to satisfy all or part of the Allowed Class 5 Canpartners Secured Claim by transfer of parcels shall be delivered in writing ("Notice of Transfer") to the holder of the Class 5 Canpartners Secured Claim, within 60 days of the Consummation Date. The Notice of Transfer shall be filed with the Court, simultaneously with transmission to Canpartners. Any satisfaction of the Class 5 Canpartners Secured Claim pursuant to this Cramdown Alternative Two shall occur by transfer of the property specified in the Notice of Transfer, within 60 days of the Consummation Date. Upon such transfer, the Allowed Class 5 Canpartners Secured Claim shall be paid to the extent of the value determined by the Court respecting the parcel or parcels transferred.

3.    Class 6 Claims – Unsecured, Nonpriority, Non-Insider Claims. The Class 6 Unsecured, Nonpriority, Non-Insider Claims are impaired. The Allowed Claims in this Class 6 shall be paid 100¢ on the dollar, without interest, in the manner set out herein. All Class 6 Allowed Claims shall be paid over a two year period in quarterly installments commencing on the first (1st) day of the first (1st) calendar quarter which is not less than 70 days from the Consummation Date and

continuing on the first (1st) day of each consecutive calendar quarter thereafter until all Allowed Class 6 Claims are paid.  Each quarterly payment shall be in the aggregate amount of one-eighth (1/8) of the total amount of Allowed Class 6 Claims, and the distribution shall be allocated Pro Rata among the holders of Allowed Class 6 Claims.

4.    <u>Class 7 Claim – Lanyard $1,000,000 Unsecured Claim</u>.  The Class 7 Lanyard Development, Inc. $1,000,000 Unsecured Claim is impaired.  The Class 7 Claim is undisputed, but is contingent on Lanyard accomplishing the intended zoning of Debtor Vallambrosa's Project and the annexation of the property constituting Debtor Vallambrosa's Project into the City of Savannah.  The Allowed Class 7 Lanyard $1,000,000 Unsecured Claim shall be paid as follows:

a.    <u>Settlement Alternative</u>.  If by the Confirmation Date Debtor Vallambrosa and the Holder of the Class 7 Lanyard $1,000,000 Claim are able to reach an agreement regarding the terms of treatment of the Class 7 Claim, the Claim shall be treated in the manner agreed between Debtor Vallambrosa and the holder of the Class 7 Lanyard $1,000,000 Claim will be treated as reflected by amendment to the Plan or an Order of the Court.

b.    <u>Payment From Proceeds of Sale of Lots or Development Parcels</u>.  In the event Debtor Vallambrosa and the holder of the Class 7 Lanyard

$1,000,000 Unsecured Claim are not able to agree on some other treatment, the Class 7 Lanyard $1,000,000 Unsecured Claim shall be paid as set out herein.  In the event this Court's valuation of Debtor Vallambrosa's Project is such that it is determined that no Class 8 Canpartners Unsecured Deficiency Claim exists, then the Class 7 Lanyard $1,000,000 Unsecured Claim shall be paid from proceeds of sale of Debtor Vallambrosa's Project which proceeds are the first proceeds from the sale after payment of: (i) amounts necessary to pay Allowed Claims in Classes 1, 2 3, 4, 5 and (ii) the Priming Infrastructure Development Loan.  In the event it is determined that a Class 8 Canpartners Unsecured Deficiency Claim will exist because of this Court's valuation of Debtor Vallambrosa's Project, the Class 7 Lanyard $1,000,000 Unsecured Claim shall be paid Pro Rata with the Class 8 Canpartners Unsecured Deficiency Claim from any proceeds of sale of Debtor Vallambrosa's Project, after payment of Allowed Claims in Classes 1, 2, 3, 4, 5 and the Priming Infrastructure Development Loan.

  5. <u>Class 8 Claim – Canpartners Unsecured Deficiency Claim</u>.  The Class 8 Canpartners Unsecured Deficiency Claim is impaired, if such claim is found to exist, after this Court's valuation of Debtor Vallambrosa's Project.  In the event Canpartners is found to hold a Class 8 Unsecured Deficiency Claim as a result of such valuation, the Class 8 Canpartners Unsecured Deficiency Claim shall be paid

pro rata with any Allowed Class 7 Lanyard $1,000,000 Unsecured Claim. Payments shall be made to the holders of any Allowed Class 7 Lanyard $1,000,000 Unsecured Claim and Class 8 Canpartners Unsecured Deficiency Claim, from the first proceeds of sale of Debtor Vallambrosa's Project after payment of: (i) amounts necessary to pay Allowed Claims in Classes 1, 2, 3, 4 and 5; and (ii) the Priming Infrastructure Development Loan.

6.    <u>Class 9 Claim – Equity Interests</u>.  The Class 9 Equity Interests consist of the membership interests in Debtor Vallambrosa which are held by Jewett W. Tucker, Jr., presently constituting 100% of the membership interests of Debtor Vallambrosa.  The equity interests shall be retained by the Class 9 Equity Interests holder unless the holders of Claims in Classes 1 through 8 are not paid 100% of their Allowed Claims.  In order to facilitate obtaining the Priming Infrastructure Development Loan, the equity interest holders may transfer portions of their equity interests to guarantors of the Priming Infrastructure Development Loan.

## VI.

## FEASIBILITY OF THE PLAN

Debtor Vallambrosa's Plan proposes to pay all creditors 100 cents on the dollar.  Secured creditors will be paid interest at an agreed rate or the Determined Fair Interest Rate.

Under the Plan, Debtor Vallambrosa proposes to commence scheduled, periodic payments to unsecured creditors over a two year period commencing on the first day of the first calendar quarter which is not less than 70 days from the Confirmation Date and continuing on the first day of each consecutive calendar quarter thereafter until all such claims are paid in full. Debtor Vallambrosa's Plan proposes, in addition to alternative treatment, to pay the Canpartners Secured Claims in full from the sale of developed lots and other development parcels within Debtor Vallambrosa's Project over a period of not more than 24 months from the Confirmation Date and if the Canpartners Secured Claim is not fully paid at that time, to hold a publicized auction of Debtor Vallambrosa's Project. Regarding the sale of Debtor Vallambrosa's Project, there is no question as to feasibility because the auction process will ultimately allow a commercially reasonable auction of the project. Furthermore, Debtor Vallambrosa's Plan proposes that allowed Class 1, 2 and 3 Claims will be paid in full and, thus, are not impaired.

## VII.

## PRESENT CONDITION OF DEBTOR VALLAMBROSA

In terms of operations, Debtor Vallambrosa continues to seek rezoning of Debtor Vallambrosa's Project, with the intention of developing the Project as a mixed-use development that will be predominantly residential with supporting

commercial uses.   The Savannah Metropolitan Planning Commission has scheduled a hearing on Debtor Vallambrosa's rezoning request for August 19, 2008.  Debtor Vallambrosa has reached out to surrounding subdivision residents to solicit support for Debtor Vallambrosa's rezoning request and development of Debtor Vallambrosa's Project, and believes that it has obtained general support for such development.

## VIII.

## BEST INTEREST OF CREDITORS TEST

Under Section 1129(a)(7) of the Code, the Court must find that either all members of an impaired class of Claims or interests have accepted the Plan or that the Plan will provide a creditor who has not accepted the Plan with a recovery of property of a value, as of the effective date of the Plan, that is not less than the amount such holder would recover if Debtor Vallambrosa were liquidated under Chapter 7 of the Code.  This requirement is called the "Best Interest of Creditors Test".

If this Case were converted to a Chapter 7 liquidation proceeding, creditors could receive less than the amount of their Allowed Claims.  Under Chapter 7 liquidation, a bankruptcy trustee would be appointed to take possession and title of Debtor Vallambrosa's Project.  While the Chapter 7 trustee can obtain permission

to operate business for a short period of time while the business is being liquidated, continued operation of Debtor Vallambrosa's Project during a reasonable marketing period would be unlikely. Rather, the Chapter 7 trustee would be expected to schedule an auction on not more than approximately sixty (60) days notice and auction all of Debtor Vallambrosa's Project. This would cause an immediate sale of a huge block of real estate. Under this scenario, it is unlikely that such auction would result in the realization of the true fair market value of Debtor Vallambrosa's Project. Canpartners would have a right to credit bid under Section 363(k) of the Code. In this type of immediate liquidation, it is questionable whether any funds would be left after payment to Canpartners, and payment of expenses of administration of the Chapter 7 bankruptcy.

Further, in a Chapter 7 bankruptcy, the Chapter 7 trustee would not have factual knowledge or the experience to deal with the multitude of issues related to Debtor Vallambrosa's business and the development of Debtor Vallambrosa's Project.

## IX.

## RELATIONS WITH AFFILIATES

The affiliates of Debtor Vallambrosa are:

(1)    Jewett Tucker, the sole member and manager of Debtor Vallambrosa;

(2)    Dominy Holdings, LLC, 100% of which is owned by Jewett Tucker;

(3)    Southeast Timberlands, Inc., 100% of which is owned by Jewett Tucker;

(4)    Kings Ferry Plantation, LLC, 100% of which is owned by Jewett Tucker;

(5)    Smithonia Holdings, LLC, 100% of which is owned by Jewett Tucker;

(6)    Poplar Cove, LLC, 33% of which is owned by Jewett Tucker;

(7)    Tucker Plantation, LLC, 100% of which is owned by Jewett Tucker.

Debtor Vallambrosa does not transact business with any of these insiders and affiliates except that Southeast Timberlands, Inc., a business entity owned 100% by Debtor Vallambrosa's sole member and manager, Jewett Tucker, has advanced $100,000 in attorney retainers for Debtor Vallambrosa, and $35,000 in appraiser retainer for Debtor Vallambrosa.

## X.

### FUTURE MANAGEMENT

Debtor Vallambrosa will continue to manage the development and marketing of its Debtor Vallambrosa's Project throughout the Chapter 11 case and the post-confirmation period.  Debtor is a Georgia limited liability company.  The managing member of Debtor Jewett Tucker, a Georgia resident will continue to

manage the affairs of Debtor Vallambrosa throughout this case and during the post-confirmation period.

## XI.

## IDENTITY AND COMPENSATION OF INSIDERS

Jewett Tucker is an insider because he is a person in control of Debtor Vallambrosa within the meaning of Section 101(31)(B) of the Code. Jewett Tucker has not received any compensation from Debtor Vallambrosa during the pendency of this case in connection with any work, services or other actions either have taken on behalf of Debtor Vallambrosa. Debtor Vallambrosa does not contemplate that Jewett Tucker will receive any compensation from Debtor Vallambrosa during the pendency of this case or during the post-confirmation period, as a result of services rendered or as a result of his position in and with Debtor Vallambrosa as set forth herein. As set forth in the Plan and this Disclosure Statement, Jewett Tucker holds a Class 9 Equity Interest.

No other affiliate or insider of Debtor Vallambrosa will receive any compensation from Debtor Vallambrosa during the pendency of this case or during the post-confirmation period, as a result of services rendered or as a result of his position in and with Debtor Vallambrosa as set forth herein.

# XII.

## DISCUSSION OF CERTAIN FEDERAL TAX CONSEQUENCES

The confirmation and execution of the Plan may have certain tax consequences to holders of Claims and Interests, as well as to Debtor Vallambrosa.

## A.    In General.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on (a) whether the creditor's Claim constitutes a security for federal income tax purposes; (b) whether the creditor reports income on the accrual basis, (c) whether the creditor receives consideration in more than one tax year, (d) whether all the consideration received by the creditor is deemed to be received by that creditor as part of an integrated transaction.    Debtor Vallambrosa does not believe that any of its non-insider, non-priority, unsecured Claims will constitute securities for federal income tax purposes.    Thus Debtor Vallambrosa does not believe that any funds received by non-insider, Non-Priority, unsecured creditors will be deemed to be the funds received in exchange for securities, such that same could be taxed as a capital transaction.

## B.    Tax Consequences to Debtor Vallambrosa.

Debtor Vallambrosa is a Georgia limited liability company.  As such, Debtor Vallambrosa has elected to be treated as a partnership for purposes of federal and

state taxation.  Thus, Debtor Vallambrosa is a tax filing entity, but is not a tax paying entity.  Any tax consequences resulting from confirmation of Debtor Vallambrosa's Plan would pass through to the Class 7 Equity Interest. Confirmation of Debtor Vallambrosa's Plan could have an effect on various tax attributes held by Debtor Vallambrosa; however, confirmation of Debtor Vallambrosa's Plan cannot result in tax liabilities which must be paid by Debtor Vallambrosa.

**C.**     **Class 9 Equity Interest.**

The holder of this Class 9 Equity Interest has advised Debtor Vallambrosa and Debtor Vallambrosa's counsel that he waives any disclosures regarding the tax consequences to these claimants of an order confirming Debtor Vallambrosa's Plan.

**D.**     **Class 1, 2 and 3 Unimpaired Claims.**

The Class 1 Administrative Claims, Class 2 Non-Tax Priority Claims and Class 3 Priority Tax Claims are unimpaired, and not entitled to vote on Debtor Vallambrosa's Plan.  Because these Claims are not entitled to vote, disclosures are not required respecting the tax consequences to the holder of these Claims, of an order confirming Debtor Vallambrosa's Plan.

**E.**   **Class 4 Chatham County Secured Tax Claim.**

The Class 4 Chatham County Secured Tax Claim is entitled to vote on Debtor Vallambrosa's Plan.  However, this governmental entity is neither a tax filing nor a tax paying entity respecting federal taxes.  Thus, consummation of Debtor Vallambrosa's Plan does not have any federal tax consequence to the holder of the Class 4 Chatham County Secured Tax Claim.

**F.**   **Class 5 Canpartners Secured Claim and Class 8 Canpartners Unsecured Deficiency Claim.**

The federal tax consequences to Canpartners of an order confirming Debtor Vallambrosa's Plan depend on a number of elections and a number of bookings by Canpartners respecting its loan to Debtor Vallambrosa, all of which elections and bookings are beyond the knowledge of Debtor Vallambrosa.  For example, Canpartners could have classified its loan to Debtor Vallambrosa as a "non-accruing loan", meaning that interest will not be booked as earnings, even though payments are received.  Debtor Vallambrosa believes the loan could be classified as totally or partially non-accruing, for any number of reasons including the mere fact of filing of this Chapter 11 proceeding by Debtor Vallambrosa.  Because Debtor Vallambrosa has no knowledge regarding the manner in which Canpartners has classified this loan or will book the receipt of payments from Debtor Vallambrosa, Debtor Vallambrosa cannot make meaningful disclosures regarding

-53-

the tax consequences to Canpartners, of an order confirming Debtor Vallambrosa's Plan.

Further, the tax treatment of the Canpartners Class 5 Secured Claim is also related to whether or not Canpartners has established reserves respecting its loan to Debtor Vallambrosa, and if so, in what amounts.  To the extent reserves have been established and losses have been or will be charged against earnings as a result of these reserves for a tax year, subsequent payments which enable Canpartners to eliminate reserves generally constitute income during the year in which the reserves are released.  Because Debtor Vallambrosa has no knowledge regarding whether or not Canpartners has established reserves, and if so, in what amount, Debtor Vallambrosa cannot meaningfully address the tax consequences to Canpartners of an order confirming Debtor Vallambrosa's Plan.

**G.   Class 6 Unsecured, Non-Priority, Non-Insider Claims and Class 7 Lanyard Development, Inc. $1,000,000.00 Unsecured Claim.**

Assuming the holders of Class 6 Unsecured, Non-Priority, Non-Insider Claims and Class 7 Lanyard Development, Inc. $1,000,000.00 Unsecured Claim are on a cash basis for tax accounting purposes, any payments received by the holders of these Class 6 Claims and Class 7 Claim will generally be treated as part of gross receipts and gross taxable income during the tax period in which the payments are received.  The consequences of the receipt of such payments will

depend on a multitude of other factors beyond the knowledge of Debtor Vallambrosa including the amount of all other gross receipts and gross taxable income received during the tax period, and the amount of all deductible expenses available to the creditor during the tax period.

In the event a holder of Class 6 Unsecured, Non-Priority, Non-Insider Claims and/or Class 7 Lanyard Development, Inc. $1,000,000.00 Unsecured Claim is on accrual accounting for tax purposes, the tax consequences to the Class 6 Unsecured Creditors and Class 7 Lanyard Development, Inc. $1,000,000.00 Unsecured Claim holder depends on a number of factors unknown by Debtor Vallambrosa, including: whether or not the unsecured claim has been written off completely, reserved against, or is being treated as a collectible account. To the extent any holder of a Class 6 Unsecured, Non-Priority, Non-Insider Claim or Class 7 Lanyard Development, Inc. $1,000,000.00 Unsecured Claim is using the accrual method for tax accounting purposes, Debtor Vallambrosa does not have sufficient information to make meaningful disclosure regarding the tax consequences to such creditor of an order confirming Debtor Vallambrosa's Plan.

**H.** **Disclaimers and Notice to Obtain Professional Tax Assistance.**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

OF THE PLAN.  THE FOREGOING DISCUSSION IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES, INCLUDING, BUT NOT LIMITED TO: WHETHER THE HOLDER HAS PREVIOUSLY CLAIMED A BAD DEBT DEDUCTION WITH RESPECT TO ITS CLAIM AGAINST DEBTOR VALLAMBROSA; WHETHER THE HOLDER OF A CLAIM REPORTS INCOME ON THE ACCRUAL OR CASH BASIS; WHETHER THE HOLDER OF A CLAIM RECEIVES DISTRIBUTIONS UNDER THE PLAN IN MORE THAN ONE TAXABLE YEAR; WHETHER THE CLAIM CONSTITUTES A CAPITAL ASSET IN THE HANDS OF THE HOLDER, AND HOW LONG IT HAS BEEN HELD OR IS TREATED AS HAVING BEEN HELD; AND ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE AND NON-U.S. INCOME TAX AND OTHER TAX CONSEQUENCES OF THE PLAN.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, EACH HOLDER IS HEREBY NOTIFIED THAT:  (i) ANY

DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (ii) SUCH DISCUSSION IS INCLUDED HEREBY BY DEBTOR VALLAMBROSA IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTOR VALLAMBROSA OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (iii) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## XIII.

## RISK FACTORS

In deciding whether to accept or reject Debtor Vallambrosa's Plan, a creditor or other claimant should consider risk factors. Each creditor or other claimant should consult its own counsel and financial advisors regarding risk factors. Some possible risk factors are listed below:

A. **General Economic Conditions.**

As is evident from daily statistics circulated in the news media, the United States economy is positioned to possibly slip into a recession.  If the United States economy moves into a recession, sales of lots and other parcels of Debtor Vallambrosa's Project could be adversely affected.

B. **Local Economic Conditions.**

While the Savannah, Georgia real estate market has not been subject to economic and geological conditions to the extent experienced in Florida and other Gulf Coast states, it is nevertheless impacted by factors adversely affecting real estate sales nationally.   Any prolonged slow-down in the real estate market, nationally, could have an adverse affect on sales of lots or parcels of Debtor Vallambrosa's Project.

## XIV.

## DISCLAIMERS

The statements contained in this Disclosure Statement are made as of the date hereof, and unless another time is specified herein, neither the delivery of this Disclosure Statement nor an exchange of rights made in connection herewith, shall under any circumstance, create an implication that there has been no change in the facts set forth herein since the date hereof.

Any benefits offered to the holders of Claims or interests, in accordance with the Plan, which may constitute securities, have not been approved or disapproved by the Securities and Exchange Commission (the "Commission"), or by any relevant government authority of any state of the United States.  Neither the Commission, nor any such state authority, have passed upon the accuracy of this Disclosure Statement or the merits of the Plan.

No representations concerning Debtor Vallambrosa, the value of its property, or the value of any benefits offered to holders of Claims or interests in connection with the Plan, are authorized by Debtor Vallambrosa, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure acceptances which are contrary to the information contained in this Disclosure Statement should not be relied on by you in arriving at its decision. Any such additional representations or inducements should be reported to counsel for Debtor Vallambrosa, James L. Paul, Chamberlain, Hrdlicka, White, Williams & Martin, 191 Peachtree Street, N.E., 34th Floor, Atlanta, Georgia 30303.  The information contained herein has not been subjected to a certified audit.  While Debtor Vallambrosa's real estate has been appraised, opinions of value may differ and circumstances may change.

The approval of the Bankruptcy Court of this Disclosure Statement does not constitute an endorsement by the Court of the Plan of Reorganization, or a guarantee of the accuracy or completeness of the information contained herein.

## XV.

## VOTING, ACCEPTANCE AND CONFIRMATION

Under the Plan, holders of Claims whose Claims are impaired by the Plan are provided the opportunity to vote to accept or to reject the Plan. The Court will determine whether impaired classes of Claims have accepted the Plan by determining whether sufficient acceptances have been received by the holders of Claims in such classes. A class of Claims is impaired if the Claims constituting that class are not paid in full, or if the Claims are adversely affected by the Plan. An impaired class of Claims will be determined to have accepted the Plan if the holders of Allowed Claims in that class casting votes in favor of the Plan: (i) hold at least two-thirds ($\frac{2}{3}$) in dollar amount of the Allowed Claims of the holders in such class who actually vote, and (ii) comprise more than one-half ($\frac{1}{2}$) the number of holders of the Allowed Claims in such class who actually vote on the Plan.

The vote of the class binds all members of the class. Thus, if a class votes to accept the Plan, the provisions of the Code designed to protect rejecting classes can not be invoked by members of that class who voted to reject the Plan. Conversely,

if a class rejects the Plan, then members of such class who voted to accept the Plan will be deprived of the benefits of the Plan if it is not confirmed.

The Code does not require that every class of Claims vote in favor of the Plan. The Plan, however, must be accepted by at least one class of holders of Claims deemed impaired under the Plan. The Court may also confirm the Chapter 11 Plan over the objection of one or more classes of Claims. The criteria under which the Court may confirm the Plan over the objection of one or more classes of Claims are set forth in Section 1129(b) of the Code. These criteria include the requirement that the Court find, with respect to each class that does not accept the Plan: (i) that the Plan does not discriminate unfairly against such class; (ii) that the Plan is fair and equitable to such class; and (iii) that the value or benefits to be distributed to the members of such class will not be less than the amount members of that class would receive if Debtor Vallambrosa were liquidated under Chapter 7 of the Code.

Even if all classes of Claims accept the Plan, however, the Court may deny confirmation of the Plan, if either the Plan or proponents of the Plan fail to comply with all applicable provisions of the Code. The Court must confirm the Plan only if it determines that the Plan meets all the requirements of Section 1129 of the Code governing confirmation of a plan of reorganization, which determinations

include, but are not limited to:  (i) that Debtor Vallambrosa has complied with the applicable provisions of Chapter 11, including the provision of Sections 1122 and 1123 of the Code governing classification of Claims and contents of a plan of reorganization; (ii) that Debtor Vallambrosa has proposed the Plan in good faith, and has not proposed anything in the Plan which is forbidden by law; (iii) that Debtor Vallambrosa has disclosed every payment or promise made by Debtor Vallambrosa, to any person or entity for services in connection with the Chapter 11 case; (iv) that one or more of the impaired classes of Claims has voted to accept the Plan; (v) that the Plan is fair and equitable to any non-accepting impaired class of Claims, and that such impaired class of Claims is not discriminated against unfairly; (vi) that the Plan is in the best interest of holders of Claims, i.e. each holder of an allowed claim either has accepted the Plan, or will receive on account of its claim, an amount of property with a value that is not less than the amount that the holder of a claim would receive if Debtor Vallambrosa were liquidated, under Chapter 7 of the Bankruptcy Code; and (vii) that the Plan is feasible.

Dated, this 4th day of August, 2008.

**Vallambrosa Holdings, LLC.,** a Georgia limited liability company, Debtor

By:      /s/ Jewett W. Tucker, Jr.
         JEWETT W. TUCKER, JR.,
         Sole Member and Manager

JAMES L. PAUL
*Georgia State Bar No. 567600*
JOHN K. REZAC
*Georgia State Bar No. 601935*
Chamberlain, Hrdlicka, White Williams & Martin
191 Peachtree Street, 34th Floor
Atlanta, Georgia  30303
(404) 659-1410
(404) 659-1852 (facsimile)

*Counsel for Debtor Vallambrosa Holdings, LLC*

286158.1
009320-000000:8/4/2008